## DAVID JOHN VUCCI *v.* STATE OF MARYLAND

[No. 672, September Term, 1972.]

*Decided June 11, 1973.*

158

The cause was submitted on briefs to THOMPSON, MOYLAN and DAVIDSON, JJ.

Submitted by *Frank Cannizzaro, Jr.,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Emory A. Plitt, Jr., Assistant Attorney General, Richard Kinlein, State's Attorney for Howard County,* and *Timothy E. Welsh, Assistant State's Attorney for Howard County,* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 12 October 1972 in the Circuit Court for Howard County, a jury presided over by Judge James MacGill convicted the appellant, David John Vucci, of escape from Patuxent Institution. On appeal he complains that the evidence was insufficient to sustain his conviction and that the court erred in refusing to propound certain *voir dire* questions.

I

Code (1957), Art. 27, § 139, insofar as here relevant, provides:

"If any offender or person *legally detained and*

*confined* in the penitentiary . . . or any place of confinement, in this State, shall escape he shall be guilty of a felony . . . ." (Emphasis supplied.)

The appellant contends that he had the absolute right to depart from the confines of Patuxent Institution because he was being illegally detained there since he had not been examined for the purpose of determining his status as a defective delinquent within six months from the date he was received by the Institution, as required by Code (1957), Art. 31B. In support of his position that his detention was illegal, he relies on *McNeil v. Director, Patuxent Institution,* 407 U. S. 245, 92 S. Ct. 2083 (1972), and an order entered on 4 October 1972 in the Circuit Court for Montgomery County by Judge Plummer M. Shearin transferring him from Patuxent Institution to the jurisdiction of the Division of Corrections because his evaluation as a defective delinquent had not been made within the time limits prescribed by Art. 31B.

In *Jennings v. State,* 8 Md. App. 321, 325, 259 A. 2d 547, 550 (1969), this Court said:

"It is settled by the great weight of authority that where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels, even though he might be able to show such defects in the procedure by which he was arrested and imprisoned as would justify his release." (Citations omitted.)

Thus it is clear in Maryland that even if a person is illegally confined because of defects in the procedure by which he was arrested and imprisoned, he is not entitled to resort to self-help but must apply for his release through regular legal channels. We think it is equally clear that even if a person, confined under color of law, is illegally confined because of violations of statutory procedures required with respect to his continued confinement, he is similarly not entitled to resort to self-help but must apply for his release through regular legal channels.

Here the record shows that on 6 May 1971, in the Circuit Court for Montgomery County, appellant was convicted of larceny. Judge H. Ralph Miller sentenced him to a term of seven years beginning on 6 May 1971 and referred him to Patuxent Institution for evaluation as to possible defective delinquency. Appellant was received at Patuxent Institution on 13 July 1971. He refused to participate in any evaluation procedure and had not been evaluated by 24 March 1972. Assuming without deciding that his continued confinement at Patuxent was illegal at that time, we find he should have applied for his release through regular legal channels. He had no right to resort to self-help. Instead, on that day he and a large number of other inmates engaged in an attempt to escape. A hole was cut in the perimeter fence of the Institution, described by the Associate Director of Patuxent as the line of demarcation between the area delineated as the confines of the Institution and that considered beyond the confines of the Institution, though still part of the Patuxent grounds. At about 10:45 a.m. that day, a guard observed appellant, among others, on the outside of the perimeter fence. The guard shot appellant in the left leg and he fell in a field in the area considered to be beyond the confines of the Institution. This evidence, which establishes that appellant departed from the area to which he was confined, was sufficient to permit the trier of the facts to find beyond a reasonable doubt that the appellant was guilty of escape under Code (1957), Art. 27, § 139. *Ford v. State,* 237 Md. 266, 270, 205 A. 2d 809, 811 (1965); *Fabian v. State,* 3 Md. App. 270, 278-81, 239 A. 2d 100, 106-07, *cert. denied,* 250 Md. 731 (1968); *Meadows v. State,* 3 Md. App. 441, 445, 239 A. 2d 767, 769-70 (1968). *See Sas v. State,* 334 F. 2d 506, 512 (4th Cir. 1964); *Slagle v. State,* 243 Md. 435, 438, 221 A. 2d 641, 643 (1966); *Caparella v. State,* 214 Md. 355, 358, 135 A. 2d 311, 313 (1957). The motion for judgment of acquittal was properly denied.

## II

The appellant also contends that the trial court erred in refusing to propound the following questions to prospective jurors on *voir dire* examination:

"Question 7: Are there any members of the prospective Jury Panel who believe that once a person is convicted of a crime that that person is not entitled to humane treatment but must suffer whatever type of treatment he might chance upon in the penal institutions of the State?

"Question 9: Are there any persons on the prospective Jury Panel who believe that there is no use to attempting to rehabilitate persons convicted of crimes?"

In *Phenious v. State*, 11 Md. App. 385, 389, 274 A. 2d 658, 660, *cert. denied*, 262 Md. 748 (1971) Judge Thompson said:

"In Maryland, the extent of a *voir dire* examination rests within the sound discretion of the trial judge. Maryland has no rule or statute defining the objects of inquiry in determining the eligibility of jurymen. The cases have, however, established that questions must relate to some specific issue of eligibility; those which are speculative or in the nature of a fishing expedition may be refused by the court in its discretion." (Citations omitted.)

We think that the trial court did not abuse its discretion in refusing to propound the above questions. The answer to the first of these questions, as proposed, would have been of little aid in determining whether a juror had a particular predisposition concerning persons previously convicted of a crime. An answer to the second question, as proposed, would have been unrelated to any specific issue of eligibility or disqualification of a juror. The court did ask questions to determine specific bias or prejudice, if any, by the jurors by reason of association with law enforcement agencies, familiarity with mass media reports concerning escapes from Patuxent Institution, and proximity to the Patuxent Institution. Under the circumstances of this case, we find no reversible error in the refusal of the trial court to ask the broad questions relating to bias and prejudice requested by the appellant. *Phenious v. State, supra; Vernon v. State*, 12 Md. App. 157, 160-61, 277 A. 2d 635, 636-37 (1971).

*Judgment affirmed.*